The Full Commission has reviewed the prior Opinion and Award based upon the of the proceedings before Deputy Commissioner Theresa B. Stephenson and the briefs submitted on appeal. Both plaintiff and defendant waived oral argument. On her appeal and based upon her assignments of error, plaintiff has shown good ground to reconsider the evidence. Having reconsider the evidence of record, the Full Commissioner reverses the prior opinion and award and enters the following Opinion and Award.
 ****************
The Full Commission finds this fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 12 March 1997 as:
 STIPULATIONS
1. At the time of the hearing of this matter, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer on 15 October 1994.
3. Defendant-employer was self-insured on 15 October 1994 and Constitution State Service Company was the servicing agent.
4. Plaintiff's average weekly wage on 15 October 1994 was $344.98, yielding a compensation rate of $229.99.
5. The alleged date of occupational exposure is 15 October 1994.
6. Plaintiff received severance pay from 16 October 1994 through 1 February 1995 in the amount of $5,157.26.
7. Plaintiff received unemployment compensation in the amount of $5,824.00.
8. The medical records of plaintiff, consisting of a medical chronology, the medical records of Dr. Nicholas Fax, Jr., the medical records of Dr. Mark Brenner, the medical records of Dillon Family Practice, the medical records of Dr. Staley Jackson, the medical records of Z. Kostecki and the medical records of Southeastern General Hospital, have been collectively marked as Stipulated Exhibit 2 and received into evidence.
9. Plaintiff's employment records, collectively consisting of Sara Lee Hosiery Nurses' Notes, 1993 and 1994 Employment Performance Summaries, 1993 and 1994 Attendance Calendars, Plant Closing Option Sheet and Job Description for AGT Operator, have been collectively marked as Stipulated Exhibit 3 and received into evidence.
10. The records of the North Carolina Employment Security Commission have been collectively marked as Stipulated Exhibit 4 and received into evidence.
11. A letter dated 13 March 1997 from Plaintiff's counsel to Dr. Z. Marek Kostecki with attachments, consisting of 4 pages, has been stipulated into evidence.
12. The deposition of Dr. Mark E. Brenner, taken on behalf of plaintiff on 9 April 1997 consisting of 29 pages, has been received into evidence.
13. The deposition of Dr. J. Nicholas Fax, taken on behalf of defendant on 29 April 1997 consisting of 20 pages, has been received into evidence.
14. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of the parties.
15. All Industrial Commission forms which are a part of this file are hereby made a part of the record.
 ****************
Based upon the evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing of this matter, plaintiff was a 42 year old female who had completed the twelfth grade of high school. Plaintiff's prior employment included working as a laborer at a tobacco warehouse and a job preparing salads at a restaurant.
2. Plaintiff first became employed by defendant-employer on 7 April 1978 as a slitter when defendant-employer was known as Temptation Hosiery. Ultimately, defendant became known as Sara Lee Hosiery and plaintiff's position became that of Inspect/Repair AGT Operator.
3. Plaintiff was employed with defendant-employer on first shift, which lasted 8 hours. Plaintiff worked Monday through Friday and sometimes on Saturdays as well. Plaintiff received a morning break of 10 minutes, a lunch break of 20 to 30 minutes and an afternoon break of 10 minutes.
4. Plaintiff's duties as an Inspect/Repair AGT Operator generally required her to receive pantyhose which she would place on a leg form and inspect, looking for defects. If defects were discovered, plaintiff would remove the hose from the form and turn to a sewing machine and make the necessary repairs. Plaintiff was part of a three member team which worked as a single unit and were required to inspect and repair hose at minimum production levels.
5. Plaintiff's minimum production level was approximately 120 to 150 dozen hose per day. Plaintiff often inspected and repaired 200 dozen hose per day.
6. In 1991, plaintiff began to experience numbness and tingling in her right and left hands. Plaintiff described a constant aching in her hands with associated nocturnal numbness.
7. Sometime in 1991 or 1992, plaintiff reported her symptoms to her supervisor, Mr. Dale Bass.
8. On 8 August 1991, plaintiff was seen by Shirley Hernandez, defendant's company nurse. Plaintiff complained of pain in her left wrist and right shoulder which began on 7 August 1991. Plaintiff also complained of pain in both wrists at times since 16 May 1991. Plaintiff was provided a wrist wrap. Upon leaving the clinic, plaintiff stated that she knew her symptoms were coming from her job. In turn, Shirley Hernandez informed plaintiff's supervisors.
9. Between 8 August 1991 and 15 October 1994, plaintiff continued to experience pain in her left and right hands. Plaintiff described symptoms of nocturnal numbness and of being unable to hold things in her hands without dropping them.
10. Plaintiff continued to perform all the duties of her employment and suffered no temporary total disability and requested no medical treatment. Plaintiff continued working without requesting medical treatment because she feared losing her job should she report her condition.
11. In 1994, plaintiff became aware that the defendant intended to close its hosiery operation in Lumberton, NC. On 13 June 1994, plaintiff was offered the opportunity to accept a position with one of defendant's plants located in Marion, SC; Florence, SC; Hartsville, SC; Darlington, SC; Rockingham, NC; Yadkinville, NC; Winston-Salem, NC; Clarksville, AR; and Las Cruces, NM. Due to transportation difficulties, plaintiff was unable to accept a position at any of these plants.
12. Due to the impending plant closing, plaintiff decided to further her education by attending courses at Robeson Community College. Prior to 15 October 1994, plaintiff entered the nursing assistant program at Robeson Community College and completed the basic course in the Nursing Assistant program. Plaintiff was to begin the second level of her training either in Home Health Care or Certified Nursing Assistant II, when she realized she would not be able to perform either of her duties because of the medical condition of her hands. Accordingly, plaintiff allowed her certification to lapse.
13. On 15 October 1994, defendant closed its hosiery operation in Lumberton and plaintiff was laid-off from her position. Plaintiff began receiving severance pay effective 16 October 1994 and received the same through 1 February 1995.
14. Due to continued pain involving her right hand and wrist, plaintiff sought and received approval from defendant to be seen by Dr. J. Nicholas Fax of the Coastal Plain Orthopaedic Clinic in Lumberton. Plaintiff was seen by Dr. Fax on 29 March 1995 with her primary complaints involving numbness and pain in her right arm and to a lesser extent, the left arm. It was Dr. Fax' opinion that plaintiff suffered from bilateral carpal tunnel syndrome.
15. On or about 1 February 1995, plaintiff's severance pay had ended and she applied for and began receiving unemployment compensation. As a condition of receiving her continued unemployment compensation benefits, plaintiff was required to make two job contacts per week during the period she drew unemployment. During the period plaintiff received unemployment compensation, she made the requisite job search efforts in compliance with the Employment Security Commission.
16. On 31 October 1995, plaintiff was seen by Dr. Z. Marek Kostecki for a social security disability determination. Dr. Kostecki's opinion at that time was that plaintiff could not lift more than 5 pounds, or perform any repetitive lifting. Dr. Kostecki also indicated plaintiff was unable to perform simple grasping, fine manipulations, pushing and pulling of arm controls with either her left hand or right hand.
17. Subsequent to Dr. Kostecki's determination, plaintiff was approved for social security disability which she began receiving in November 1996.
18. On 27 February 1996, plaintiff was seen by Dr. Mark Brenner of the Pinehurst Surgical Clinic. It was Dr. Brenner's opinion that plaintiff suffered from bilateral carpal tunnel syndrome.
19. When seen by Dr. Brenner on 27 February 1996, he opined that plaintiff was capable of employment as long as restrictions were followed. Appropriate restrictions included avoidance of repetitive pushing, pulling, gripping, pinching, squeezing, and the avoidance of production related activity demands. Dr. Brenner further opined that these restrictions would be permanent in nature regardless of whether plaintiff underwent bilateral carpal tunnel releases. Dr. Brenner estimated plaintiff's pre-surgery permanent partial impairment to measure 2% to 4% of each hand and her post-surgery permanent partial impairment to measure 4% to 6% of each hand.
20. In his deposition, Dr. Brenner testified that in his opinion, plaintiff's position with defendant-employer exposed her to an increased risk of developing carpal tunnel syndrome. Dr. Brenner was also of the opinion that her position did in fact cause or significantly contribute to her developing this disease.
21. At this time, based upon her age, education, work experience and physical restrictions, plaintiff's would benefit from vocational rehabilitation to be provided by defendant and it would be futile for her to continue any job search effort without this assistance. This vocational rehabilitation will assist plaintiff in locating suitable employment, thereby reducing the period of her disability.
22. Plaintiff's employment with defendant-employer caused or significantly contributed to her developing carpal tunnel syndrome. Further, her position with defendant placed her at an increased risk of developing the occupational disease carpal tunnel syndrome as opposed to members of the general public not so employed.
23. As the result of her occupational disease, plaintiff has been unable to earn wages in her former position with defendant-employer or in any other employment since 16 October 1994.
 ****************
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's employment with defendant caused or significantly contributed to her developing carpal tunnel syndrome and exposed her to an increased risk of developing this occupational disease. G.S. § 97-53(13).
2. As the result of her occupational disease, plaintiff is entitled to be paid by defendant temporary total disability compensation at the rate of $229.99 per week for the period of 16 October 1994 through the present and continuing until such time as plaintiff returns to work or until further order of the Commission. G.S. § 97-29.
3. Defendant is entitled to a credit against compensation awarded herein in the amount of $10,981.26 for the severance pay and unemployment compensation benefits plaintiff has received. G.S. § 97-42; G.S. § 97-42.1.
4. As a result of her occupational disease, plaintiff is entitled to have defendant pay for all related medical expenses and for defendant to provide vocational rehabilitation. G.S. § 97-25; G.S. § 97-25.1.
 ****************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay temporary total disability compensation to plaintiff at the rate of $229.99 per week from 16 October 1994 and continuing through the present until such time as plaintiff returns to work or until further order of the Commission. Against the amount of compensation having accrued, defendant is entitled to a credit in the amount of $10,981.26, with the remaining portion of the accrued compensation being paid to plaintiff in a lump sum, subject to an attorney fee approved herein.
2. Defendant shall pay for all medical expenses related to plaintiff's bilateral carpal tunnel syndrome.
3. Defendant shall provide plaintiff with vocational rehabilitation, which she shall cooperate with, in order to assist her in obtaining suitable employment based upon plaintiff's age, education, prior work experience and physical restrictions.
4. A reasonable attorney fee in the amount of twenty-five percent (25%) of the compensation awarded above is approved for counsel for plaintiff. From the accrued compensation, this fee shall be deducted from the amounts owed to plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check payable to plaintiff thereafter.
5. Defendants shall pay the costs.
 S/ ______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ______________ DIANNE C. SELLERS COMMISSIONER
S/ ____________ THOMAS J. BOLCH COMMISSIONER